**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| LANE GAY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MORTGAGE CONTRACTING SERVICES, LLC,<br><br>    Defendant. | Case No. 4:24-cv-00217-SDJ |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**
**AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................... 1

II.     PLAINTIFF'S ALLEGATIONS ............................................................... 2

   A.     MCS's Business and the Data Incident ............................................... 2

   B.     Procedural History ............................................................................... 3

   C.     The Settlement Terms .......................................................................... 4

     1.     The Settlement Class ....................................................................... 4

     2.     Settlement Benefits ......................................................................... 4

     a.     Compensation for Documented Ordinary Losses ............................ 4

     3.     Notice to Class Members ................................................................. 6

     4.     Claims, Objections, Opt-Outs, and Termination ............................ 7

     5.     Release ............................................................................................. 8

III.     ARGUMENT AND HISTORY ................................................................. 8

   A.     Class Action Settlement Approval Process ......................................... 8

     1.     The Settlement is the product of serious, informed, and arm's-length negotiations. 11

     2.     The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members. .............................. 12

   C.     Preliminary Certification of the Settlement Class is Appropriate ..... 12

     1.     The Settlement Class satisfies the requirements of Rule 23(a). ......... 14

     2.     The Settlement Class satisfies the requirements of Rule 23(b). ......... 16

   D.     The Court Should Approve the Proposed Notice Program ................ 17

   E.     The Court Should Appoint the Claims Administrator ........................ 19

   F.     The Court Should Appoint the Class Representative ......................... 19

G.    The Court Should Appoint Settlement Class Counsel........................................20

IV.    CONCLUSION ....................................................................................................20

This motion comes before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of a class settlement in this matter. Plaintiff respectfully moves this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Simpluris as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Lane Gay as Representative of the Settlement Class; (6) appointing Cassandra P. Miller of Strauss Borrelli PLLC as Settlement Class Counsel; (7) approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C), all attached to the Settlement, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Plaintiff's service award.

This Motion is based upon: (1) this Motion and the following supporting memorandum; (2) Class Counsel's Declaration; (3) the Settlement Agreement; (4) the Parties' proposed Notice program; (5) the [Proposed] Preliminary Approval Order; (6) the records, pleadings, and papers filed in this Action; and (7) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing.

## I.    INTRODUCTION

Plaintiff Lane Gay, on behalf of himself and all others similarly situated, respectfully requests that the Court grant preliminary approval of the parties' proposed class action settlement under Federal Rule of Civil Procedure 23.

After months of hard-fought arm's-length negotiations, the Plaintiff and Defendant Mortgage Contracting Services, LLC ("Defendant" or "MCS") reached the Settlement Agreement

(the "Settlement" or "S.A.") attached hereto as **Exhibit 1**.[1] The Settlement provides timely and excellent benefits to the Settlement Class. Under the Settlement, Settlement Class Members are eligible to recover compensation for up to $500 of ordinary out-of-pocket expenses, up to $5,000 in extraordinary out-of-pocket expenses, up to $25 per hour for up to three hours of lost time (or $75 total), and two years of credit monitoring protection with up to $1 million in identity theft protection insurance. In addition, MCS will undertake commitments to implement or maintain additional data security measures at its own expense and separate from the other settlement benefits for the Settlement Class. As detailed herein, the Settlement satisfies the preliminary approval standard.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide the Settlement Class Members with substantial monetary relief without the risk of delay of further litigation. Further, the Court should certify the Settlement Class because it satisfies each of the Federal Rule of Civil Procedure 23(a) and (b) requirements, and the Court should appoint Plaintiff and Class Counsel, who satisfy the adequacy requirements of Rule 23. Additionally, the Court should appoint Simpluris as the Settlement Administrator, approve the proposed notice plan, and order that notice issue to the class. Last, the Court should set a final approval hearing.

## II.    PLAINTIFF'S ALLEGATIONS

### A.  MCS's Business and the Data Incident

---

[1] All capitalized terms used herein should be given the meaning assigned in the Settlement Agreement.

MCS is a "nationwide property services provider" and touts itself as "one of the premier default and property preservation providers for the mortgage industry." Doc. 4 ("Amend. Compl.") ¶22.

Between December 9 and December 13, 2023, MCS experienced a ransomware attack where cybercriminals breached its systems and obtained the Personal Identifiable Information ("PII") of MCS' current and former employees and customers, including names and Social Security numbers (collectively the "Private Information"). Compl. ¶¶ 2, 28. Following this incident, MCS mailed notice to affected persons in February 2023. *Id*. ¶ 34. Plaintiff is an employee of a former employee of MCS and a victim of this Data Incident. *Id*. ¶ 11. MCS denies these allegations.

## B. Procedural History

Following MCS's notification to victims of the Data Incident and an investigation by Settlement Class Counsel, Plaintiff filed this class action lawsuit on March 11, 2024. *See* Doc 1, Complaint. Plaintiff alleged that, as a result of the Data Incident, MCS was liable for negligence, negligence *per se*, intrusion upon seclusion/invasion of privacy, breach of implied contract, breach of fiduciary duty, breach of confidence, and unjust enrichment. *Id*. Shortly thereafter, Plaintiff filed an Amended Complaint on March 14, 2024. *See* Amend. Compl. On July 1, 2024, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, which the parties fully briefed. Docs. 13, 18, 21.

Recognizing the benefits of early resolution of Plaintiff's and the Class's claims, the parties agreed to explore settlement. Declaration of Cassandra P. Miller ("Miller Decl."), ¶5. While the arm's length negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their

respective clients. *Id*. ¶6. A term sheet was agreed to in February 2025, and in the weeks that followed, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id*. ¶¶7-8. The Settlement Agreement was finalized and executed in June 2025. *See* Ex. 1. Settlement Class Counsel successfully negotiated the Settlement of this matter to the benefit of Plaintiff and the Settlement Class.

### C.  The Settlement Terms

#### 1.  The Settlement Class

The Settlement provides for the certification of the Settlement Class defined as "all individuals in the United States whose PII was impacted by the Data Incident, including all those who were sent notice of the Data Incident." S.A. ¶ 40. All members of the Settlement Class that do not opt-out of the settlement shall be referred to as Settlement Class Members.

#### 2.  Settlement Benefits

The Settlement provides Settlement Class Members with timely benefits targeted at remediating the specific harms they have suffered as a result of the Data Incident. The benefits of the Settlement are available to all Settlement Class Members, with Defendant agreeing to pay for Settlement Class Benefits, Settlement Administration and Notice costs, credit monitoring, attorney's fees and costs, and Plaintiff's service award. Settlement Class Members can make claims for the following benefits:

##### a.  Compensation for Documented Ordinary Losses

Settlement Class Members are eligible to receive compensation for up to $500 of their ordinary losses, including documented out-of-pocket expenses, lost time, and documented fees for credit reports, credit monitoring, or other identity theft insurance products that were incurred as a

result of the Incident through submission of a valid and timely claim and supporting documentation. S.A. ¶ 52(a).

### 1. *Documented Out-Of-Pocket Expenses*

Documented ordinary out-of-pocket expenses include unreimbursed bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. The expenses must have been incurred between December 9, 2023, and seven days after the Court approved notice of settlement is sent to the Class. S.A. ¶¶ 28, 52(a)(i).

### 2. *Documented Fees*

Documented fees for credit reports, credit monitoring, or other identify theft insurance products purchased December 9, 2023, and seven days after the Court approved notice of settlement is sent to the Class are also recoverable, subject to the $500 cap. S.A. ¶ 52(a)(ii).

### 3. *Reimbursement for Attested Lost Time*

The Settlement also allows Settlement Class Members who have spent at least one hour dealing with the Data Incident to claim up to three hours of lost time at $25 per hour (or up to $75 total) by submitting a claim attesting to the number of hours spent responding to issues raised by the Data Incident and checking a box describing how the claimed lost time was spent. S.A. ¶ 52(b). Claims for lost time may be combined with claims for documented out-of-pocket expenses and are subject to the same $500 cap. *Id.*

### b. **Compensation for Documented Extraordinary Losses**

Settlement Class Members who submit a valid and timely claim are also eligible to recover for up to $5,000 of their documented and unreimbursed extraordinary losses "more likely than not

caused by" the Data Incident occurring between December 9, 2023, and seven days after the Court approved notice of settlement is sent to the Class. S.A. ¶ 52(c).

### c.   Credit Monitoring Protections

In addition to financial and temporal loss reimbursements, Plaintiff negotiated for credit monitoring services for the Settlement Class. All Settlement Class Members shall be offered two years of Credit Monitoring Services to include credit monitoring through three national credit reporting bureaus and at least $1,000,000 in identity theft insurance. S.A. ¶ 51. This Settlement benefit bears significant value, and MCS will pay for it separate and apart from the other benefits offered. *Id*.

### d.   Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiff's service award until after they agreed on all material terms of relief to the Settlement Class. Miller Decl. ¶7. MCS will pay the costs of notice to the Settlement Class, costs of Claims Administration, and the costs of dispute resolution. S.A. ¶ 62. MCS will also pay for Plaintiff's attorneys' fees, costs, and expenses (not to exceed $137,500), and a service award to Plaintiff (up to $3,000), subject to Court approval. S.A. ¶¶ 78, 80. Settlement Class Counsel will separately petition the Court for such fees, costs and expenses no later than 14 days prior to the objection deadline, unless the Court orders otherwise. *Id*.

### 3.   Notice to Class Members

Notice shall be disseminated via email or, if a valid email address is unavailable, postcard through First Class U.S. mail to Settlement Class Members on the Settlement Class List. S.A. ¶ 60. Notice shall also be provided on the Settlement Website. *Id.* For postcard Notices that are undeliverable, the Settlement Administrator shall use reasonable efforts (e.g., skip trace) to

identify an updated mailing address and resend the postcard notice if an updated mailing address is identified. *Id.* The Settlement Administrator will start this process within 30 days after the Court preliminarily approves the settlement. S.A. ¶ 23.

### 4.  Claims, Objections, Opt-Outs, and Termination

Settlement Class Members will have 90 days from the day the Claims Administrator notifies the Settlement Class to submit claims. S.A. ¶ 5. The Claims Administrator will adjudicate all claims, including by reviewing any documents a claimant attaches to support their claim. S.A. ¶ 54. Settlement Class Members will have 21 days to address any defects identified by the Claims Administrator, who will determine whether the Settlement Class Member has cured them. S.A. ¶¶ 54(h). If the Settlement Administrator determines that the Settlement Class Member has not cured the deficiencies, the Settlement Administrator will notify the Settlement Class Member within 14 days of that determination. *Id.*

Settlement Class Members may opt-out from receiving from receiving the Settlement's benefits by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than 60 days after the Notice Deadline. S.A. ¶ 64. The parties conditioned their Settlement on this Court's approval, meaning the parties will have the right to terminate this Agreement by providing written notice of their or its election to do so within seven 7 days of the Court's refusal to grant preliminary approval of the Settlement in any material respect; or within 14 days of either the Court's refusal to enter the Final Approval Order and Judgment in any material respect, or the date upon which the Final Approval Order and Judgment is modified or reversed in any material respect by any appellate or other court. S.A. ¶¶ 27, 64.

Settlement Class Members may also object to the Settlement within 60 days of the notice deadline. S.A. ¶ 25. A timely written notice of their objection must be filed with the Clerk of Court and contain the case name and docket number and be served concurrently upon Settlement Class

Counsel and counsel for MCS. S.A. ¶ 65. To object, an objector's written notice must include their full name, current mailing address, and telephone number; the name of the proceedings; a statement that states the grounds for the objection and any supporting documents; a statement as to whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; the identity of any attorneys representing the objector; a statement of whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and the signature of the Settlement Class Member or the Settlement Class Member's attorney. S.A. ¶ 65.

### 5. Release

To receive the Settlement's Benefits, Plaintiff and Settlement Class Members agree to release MCS for all claims and causes of action asserted or that could have been asserted by any Settlement Class Member based on, relating to, concerning, or arising out of the Data Incident. S.A. ¶¶ 74-77.

## III. ARGUMENT AND HISTORY

### A. Class Action Settlement Approval Process

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993).

Plaintiff asks the Court to begin the settlement approval process by granting preliminary approval of the proposed Settlement. Because no class has been certified, "the judge should [also] make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." William B. Rubenstein, *Newberg on Class Actions* § 13:18 (5th ed. June 2019 update) (citation omitted). Settlement agreements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"—rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996)). The proposed Settlement Agreement falls within the range of possible approval, so the Court should grant Plaintiff's motion.

### B.  The Settlement Satisfies the Criteria for Preliminary Approval

At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See In re Cirrus Logic, Inc.*, No. A-07-CA-212-SS, 2009 WL 10670041, at *6 (W.D. Tex. Jan. 8, 2009). The standards at the preliminary approval stage are not as stringent as those applied to a motion for final approval. *See In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015) (citation omitted). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314-315.

On preliminary approval, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2). Under

Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." *Id*. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id*. 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Fifth Circuit developed the *Reed* factors for determining whether a settlement was fair, adequate, and reasonable, including: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiff prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representative, and absent class members. *See Stott v. Cap. Fin. Servs. Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011) (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Fifth Circuit courts often combine Rule 23 and the *Reed* factors in analyzing class settlements. *See ODonnell*, 2019 WL 4224040, at *8 (citing *Hays v. Eaton Grp. Attorneys, LLC*, No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019)); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019).

The public interest strongly favors the voluntary settlement of class actions and there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. See *Hays*, 2019 WL 427331, at *9; *In re Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mex.*, 910 F. Supp. 2d 891, 930–31 (E.D. La. 2012). A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." *O'Donnell*, 2019 WL 4224040, at *7 (quoting 2 McLaughlin on Class Actions, § 6:7 (15th ed. 2018)). Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Fifth Circuit's *Reed* factors, this Court should grant preliminary approval and direct notice to issue to the class.

        **1.   The Settlement is the product of serious, informed, and arm's-length negotiations.**

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Settlement is the result of negotiations among experienced counsel who have significant experience in working with data breach class actions. Miller Decl. ¶¶ 9, 15-23. Throughout negotiations, the parties exchanged key information needed to inform their strategies, including the size of the class, and the types of data involved in the breach. *Id*. ¶ 6. This exchange of information allowed the parties to work towards agreement on the substantive terms of the Settlement. *Id*. Throughout all negotiations, Settlement Class Counsel and counsel for MCS fought hard for the interests of their respective clients. *Id*. Settlement Class Counsel has extensive experience litigating consumer cases, including

class actions involving data breaches. *Id.* ¶¶ 9,15-23, Ex. A. These factors—the time and effort spent on the negotiations and the quantity and quality of information used during negotiations—favor preliminary approval of the Settlement because they strongly indicate a lack of collusion.

**2.    The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members.**

The benefits made available to Class Members through this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement ensures that Settlement Class Members will be compensated for their out-of-pocket costs, time, and extraordinary losses. Moreover, to prevent additional harm and to protect from fraud, Settlement Class Members are entitled to two years of credit monitoring. S.A. ¶ 51. These benefits are immediate and significant, and Settlement Class Counsel acknowledges that it is possible that the Class could receive nothing if the case is litigated to trial. Miller Decl. ¶¶ 9, 11.

While Plaintiff believes in the merits of the claims in this case, Plaintiff is aware that a successful outcome is uncertain and would be achieved, if at all, only after prolonged litigation with the risk of drawn-out appeals and the potential for no recovery at all. The proposed Settlement of this matter provides significant relief to the Settlement Class Members and is well within the range of other data breach settlements in the relief that it provides. *See id.* ¶ 9.

Further, the Settlement treats all Settlement Class members fairly and equally. Each Settlement Class member is entitled to file a claim to obtain settlement benefits. The total amount of the Settlement Benefits is fair, reasonable and adequate in light of the risks the Plaintiff and Settlement Class faced and the potential damages available.

**C.  Preliminary Certification of the Settlement Class is Appropriate**

Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or

fact; (3) the representative's claims are typical of the class claims; and (4) the representative will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a); *see also Nelson v. Constant*, No. 3:20-CV-3042, 2020 WL 5258454, at *4 (E.D. La. Sept. 2, 2020) (citing Fed. R. Civ. P 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Indeed, courts have been certifying similar nationwide classes in data breach cases. *See, e.g., In re Heartland Payment Systems,* Inc. Customer Data Sec. Breach Litig., 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). This case should similarly be certified for settlement purposes only.

### 1.  The Settlement Class satisfies the requirements of Rule 23(a).

#### a.  Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has found that a class of 100 to 150 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class includes approximately 2,877 individuals and satisfies this factor.

#### b.  Commonality

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the questions linking class members are substantially related to the resolution of the litigation and are capable of generating common answers "apt to drive the resolution of the litigation," even where the individuals are not identically situated. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *Nelson v. Constant*, 2020 WL 5258454, at *5 (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014)).

Plaintiff here easily meets the commonality requirement because he can demonstrate numerous common issues exists. Questions common across the entire class include: whether MCS failed to adequately safeguard records and implement and maintain reasonable and appropriate security procedures and practices, whether MCS's data security systems complied with data security laws and regulations, and whether MCS's conduct was negligent. These common questions, and others alleged by Plaintiff in his Complaint, are central to the causes of action

brought here, will generate common answers, and can be addressed on a class wide basis. Plaintiff thus has met the commonality requirement of Rule 23.

### c.  Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the ransomware attack on MCS's computer system—and the cybersecurity protocols that MCS had (or did not have) in place to protect Plaintiff's and Settlement Class Members' data. Plaintiff's claims are typical.

### d.  Adequacy

To be adequate, Plaintiff must establish that: (1) there is no antagonism or conflict of interest between the Class Representative and other class members; and (2) counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiff's interests are aligned with those of the Settlement Class because they all seek relief for injuries arising out of the same Data Incident. Plaintiff's and Settlement Class Members' Private Information was allegedly compromised by MCS in the same manner. Moreover, the Settlement Agreement provides that Plaintiff and Settlement Class Members are all eligible for the same benefits. Though Plaintiff will be seeking a $3,000 award for his services on behalf of the Settlement Class, this award is lower than the amount that can be recovered by any Settlement Class Member for documented and unreimbursed extraordinary losses. This amount is also justified by the benefits brought to the Settlement Class by the work of Plaintiff.

Finally, Settlement Class Counsel has significant experience litigating class actions, particularly in the data breach context. Settlement Class Counsel is well-suited to advocate and litigate on behalf of the Settlement Class. *See* Miller Decl. ¶¶9, 15-23, Ex. A. Settlement Class Counsel has put her collective experience to use in negotiating an early-stage settlement that guarantees immediate, significant relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

### 2.   The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

### a.   Predominance

First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether MCS had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Settlement Class Members, and whether MCS breached that duty. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security

to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *Hapka v. Carecentrix, Inc.*, Case No. 2:16-cv-02372-KGG, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) (same).

### b. Superiority

Second, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of data breach cases arising out of the same Data Incident. Because the common questions of fact and law that arise from MCS's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

### D. The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement is designed to meet all the criteria set forth by Due Process clauses of the United States and Texas Constitutions and Federal Rule of Civil

Procedure 23. *See* S.A. Exs. A-B. Here, the Settlement provides for direct and individual Notice to be sent via email or, if a valid email address is not available, via first class mail to each Settlement Class Member. S.A. ¶¶60. For Notices sent via mail that are returned as undeliverable, the Settlement Administrator shall use reasonable efforts to identify an updated mailing address and resend the postcard notice if an updated mailing address is identified. *Id.*

In addition to disseminating Notice via direct mail, the Claims Administrator will establish the Settlement Website where all versions of the Settlement Notice will be available to Settlement Class Members, along with all relevant filings. S.A. ¶61. The Claims Administrator will also make a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. *Id.*

The Notices themselves are clear and straightforward. S.A. Exs. A-B. They define who is a Settlement Class Member and clearly outline the options available to them and the deadlines for taking action. *Id.* The Notices disclose the essential terms of the Settlement Agreement, including the Service Award request for the Class Representative and the amount Settlement Class Counsel intends to seek in attorneys' fees, costs, and expenses. *Id.* The Notices explain the procedures for making claims, objecting, and requesting exclusion and provide Settlement Class Members with information that enables them to calculate their individual recovery. *Id.* Finally, the Notices alert the Settlement Class Members to the date, time, and place of the Final Fairness Hearing and to the contact information for Settlement Class Counsel. *Id.*

The proposed direct mail Notice is the gold standard and is consistent with other Notice programs approved in the Fifth Circuit. *See Stott*, 277 F.R.D. at 342 (approving notice sent to class members by first class mail); *Billitteri v. Securities Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, at *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be

the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Accordingly, the Notice provides Due Process under the U.S. and Texas Constitutions and complies with the Rule 23 requirements and should be approved by the Court. *See* U.S. Const., amend. XIV; Tex. Const., art. 1, § 19; Fed. R. Civ. P. 23(c)(2)(b) & (e)(1).

### E.  The Court Should Appoint the Claims Administrator

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Simpluris to serve as the Claims Administrator. Simpluris has a trusted and proven track record of supporting hundreds of class action administrations, with vast legal administration experience. *See* Miller Decl. ¶8.

### F.  The Court Should Appoint the Class Representative

Plaintiff should be provisionally appointed Class Representative. As set forth above, he has represented the Settlement Class with no conflict of interest or antagonism between himself and other members of the class. His Private Information, like the Private Information of the Settlement Class Members, has been impacted in the same Data Incident, and, as a result, Plaintiff has the same interests as the Settlement Class Members. *See* Miller Decl. ¶ 4. Moreover, Plaintiff has capably represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id*. Finally, Plaintiff has been informed about the nature of a class action and the potential advantages and disadvantages by proceeding in a class action rather than individually. *Id*.

### G.  The Court Should Appoint Settlement Class Counsel

Plaintiff requests appointment of Attorney Cassandra P. Miller of Strauss Borrelli PLLC as Settlement Class Counsel. Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. *See* Miller Decl. ¶¶ 9, 15-23, Ex. A.

## IV. CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiff respectfully requests that this Honorable Court enter an Order: 1) Preliminarily approving the Settlement; 2) Directing that Notice be disseminated to the Settlement Class Members in accordance with the Notice Program; 3) Appointing Simpluris as Settlement Administrator; 4) Approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C) attached to the Settlement Agreement; 5) Appointing Lane Gay as Representative of the Class; 6) Appointing Cassandra P. Miller of Strauss Borrelli PLLC as Settlement Class Counsel; 7) Scheduling a Final Fairness Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiff's service awards to be held at least 120 days after entry of the Preliminary Approval Order; and 8) Such other relief as the Court deems just and proper.

Dated: June 24, 2025                     By:  */s/ Cassandra Miller*
                                         Cassandra Miller (*pro hac vice*)
                                         STRAUSS BORRELLI PLLC
                                         One Magnificent Mile
                                         980 N Michigan Avenue, Suite 1610
                                         Chicago IL, 60611
                                         Telephone: (872) 263-1100
                                         Facsimile: (872) 263-1109
                                         cmiller@straussborrelli.com

                                         *Attorneys for Plaintiff and the Proposed Class*

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

The undersigned counsel conferred with Defendant's counsel via email on June 20, 2025

and was informed that Defendant does not oppose this motion.

DATED this 24th day of June, 2025.

By: */s/ Cassandra Miller*
Cassandra Miller (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
cmiller@straussborrelli.com

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 24th day of June, 2025.

STRAUSS BORRELLI PLLC

By: */s/ Cassandra Miller*
    Cassandra Miller (*pro hac vice*)
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    cmiller@straussborrelli.com