# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| **LANE GAY**, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>**MORTGAGE CONTRACTING SERVICES, LLC**,<br><br>                Defendant. | Case No. 4:24-cv-00217-SDJ |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff Lane Gay, on behalf of himself and all others similarly situated ("Plaintiff"), respectfully moves for final approval of the Settlement Agreement and Release (Doc. 28-1) (the "Settlement," "Settlement Agreement", or "S.A.") between Plaintiff and Defendant Mortgage Contracting Services, LLC ("MCS" or "Defendant"), as well as final approval of the Settlement Class certification previously granted by this Court for settlement purposes in its Order Granting Preliminary Approval (Doc. 30) (the "Preliminary Approval Order"). Plaintiff seeks a determination that the Settlement is fair, reasonable, and adequate, and that final judgment should be entered in accordance with its terms, dismissing Plaintiff's claims against Defendant with prejudice.

This Court preliminarily approved the Settlement on July 3, 2025, finding that it was likely fair, reasonable, and adequate under Rule 23(e), approving the notice and claims administration process, appointing Plaintiff as Settlement Class Representative and Cassandra P. Miller of Strauss Borrelli PLLC as Settlement Class Counsel, and scheduling a Final Approval Hearing (Doc. 30). The Settlement was reached after substantial investigation, contested motion practice, and arm's-length negotiations between experienced counsel, and it resolves all claims arising out of the December 9–13, 2023 data security incident in which Plaintiff alleges that MCS systems were compromised and Settlement Class Members' personal information was exposed.

With this Settlement, Plaintiff achieved precisely what this case was intended to accomplish: delivering timely, meaningful relief to individuals impacted by the Data Incident while avoiding the significant risks, delay, and expense of continued litigation. If approved, the Settlement provides Settlement Class Members with the opportunity to recover up to $500 in documented ordinary losses (including up to $75 for lost time), up to $5,000 in documented

1

extraordinary losses, and two years of credit monitoring with $1 million in identity theft insurance, all without any aggregate cap on valid claims.

MCS will also pay the costs of settlement administration and notice, Class Counsel's attorneys' fees and expenses (not to exceed $137,500), and a service award to Plaintiff (not to exceed $3,000), each subject to Court approval, without reducing the relief available to the Settlement Class. The Settlement Administrator disseminated notice by email and first-class mail in accordance with the Court's Order and the Settlement Agreement, and Settlement Class Members were provided with a full and fair opportunity to submit claims, request exclusion, or object. Notably, no Settlement Class Members objected to the Settlement or requested exclusion, underscoring the fairness and adequacy of the relief obtained.

Accordingly, the Settlement easily satisfies Rule 23(e) and Fifth Circuit standards for final approval. Where, as here, a settlement is the product of informed, arm's-length negotiations, provides substantial relief, and conserves significant judicial resources, it is entitled to a strong presumption of fairness. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010). Given the litigation risks, defenses asserted, and uncertainty inherent in prosecuting data-breach claims through discovery, summary judgment, and trial, the results achieved here exceed what Rule 23(e) requires. Plaintiff therefore respectfully requests that the Court grant final approval of the Settlement.

## II. BACKGROUND

### A. The Litigation

Defendant Mortgage Contracting Services, LLC ("MCS") is a nationwide property services provider headquartered in Lewisville, Texas (Doc. 4 ("Compl.") ¶¶ 14, 22). Plaintiff alleges that in the course of its business, MCS collected and maintained highly sensitive personally

identifiable information ("PII") belonging to its current and former employees and customers, including names and Social Security numbers. *Id.* ¶¶ 3, 24–29.

As alleged in the Complaint, cybercriminals gained unauthorized access to MCS's computer systems during a data security incident that occurred between December 9 and December 13, 2023 (the "Data Incident"). *Id.* ¶¶ 2–3, 31. According to the Complaint, the unauthorized actor may have acquired files containing the PII of at least 1,143 current and former employees and customers, including Plaintiff. *Id.* ¶¶ 1–3.

1. As a result, on March 11, 2024, Plaintiff filed this putative class action against MCS on behalf of himself and similarly situated individuals. The Complaint asserted claims for negligence, negligence per se, intrusion upon seclusion/invasion of privacy, breach of implied contract, unjust enrichment, breach of fiduciary duty, and breach of confidence, and sought damages, injunctive relief, and other equitable relief. Doc. 1, ¶¶ 98–174. Shortly thereafter, Plaintiff filed an Amended Complaint on March 14, 2024 alleging those same causes of action. *See* Amend. Compl., ¶¶ 100-176. On July 1, 2024, Defendant filed a motion to dismiss Plaintiff's Amended Complaint, which the parties fully briefed. Docs. 13, 18, 21. Defendant denies that it did anything wrong and denies all allegations, claims and all wrongdoing and liability.

B. **Negotiation and Settlement**

Recognizing the benefits of early resolution of Plaintiff's and the Class's claims, the parties agreed to explore settlement. Declaration of Cassandra P. Miller in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement, Doc. 29 ("Miller MPA Decl."), ¶5. While the arm's length negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id.* ¶6. A term sheet was agreed to in February 2025, and in the weeks

3

that followed, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id*. ¶¶7-8. The Settlement Agreement was finalized and executed in June 2025. *See* S.A. Settlement Class Counsel successfully negotiated the Settlement of this matter to the benefit of Plaintiff and the Settlement Class.

### C. The Settlement

As set forth above, the proposed Settlement provides meaningful and comprehensive relief to Settlement Class Members while avoiding the risks, expense, and delay of continued litigation. The Settlement makes four primary categories of relief available to all Settlement Class Members and was structured to ensure that relief is directly tied to the harms alleged in the Action.

First, the Settlement provides uncapped monetary relief for documented losses attributable to the Data Incident. Settlement Class Members may submit claims for reimbursement of:

- **Extraordinary out-of-pocket losses** of up to $5,000 per claimant for losses that were more likely than not caused by the Data Incident, subject to reasonable documentation requirements set forth in the Settlement Agreement (S.A. ¶ 52(c)); and

- **Ordinary out-of-pocket losses** of up to $500 per claimant, including unreimbursed bank fees, postage, long-distance phone charges, mileage or local travel expenses, and similar costs incurred as a result of the Data Incident (S.A. ¶ 52(a)).

Settlement Class Members who spent time responding to the Data Incident may also recover compensation for lost time, at $25 per hour for up to three hours (maximum $75), by submitting a claim attesting to the time spent addressing issues related to the incident. S.A. ¶ 52(b). Compensation for lost time is included within, and subject to, the $500 cap on ordinary losses. *Id.*

Second, the Settlement provides two years of credit monitoring and identity theft protection at no cost to Settlement Class Members who elect this benefit. S.A. ¶ 51. The credit monitoring includes coverage through the major credit bureaus and is accompanied by $1 million in identity theft insurance, providing forward-looking protection against misuse of compromised personal information. *Id.*

Third, Defendant agreed to pay the costs of settlement administration and notice, including the Claims Administrator's fees and expenses, as well as Class Counsel's attorneys' fees and costs and Plaintiff's service award, each subject to Court approval. S.A. ¶¶ 62, 78, 80. Importantly, these amounts are paid separately by Defendant and do not reduce the relief available to Settlement Class Members.

### D. Preliminary Approval, Notice, and Claims Activity

On June 24, 2025, Plaintiff moved the Court to "preliminarily" approve the Agreement and implement its terms. Docs. 28-29. After considering the merits underlying the proposal, the Court granted Plaintiff's motion, ordering the parties to hire an administrator and notify the class. Doc. 30. Since then, the parties have carried out the Agreement's terms, delivering settlement notices on class members and collecting their claims. Declaration of Christopher Leung of Settlement Administrator Simpluris, Inc. Regarding Notice and Administration ("Leung Dec."), ¶¶ 6-12.

The Claims Administrator was charged with notifying the class and processing class member claims. Simpluris is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters. *Id.* ¶ 2. Indeed, Simpluris has been involved with some of the most complex and significant notice programs in recent history, including administering over 9,000 cases nationwide, with class sizes ranging from a few hundred to over one million class members. *Id.* As the Claims Administrator,

5

Simpluris was required to send CAFA notice update contacts for class members, create a settlement website, establish a toll-free number, notify the class by First Class Mail, and process claims, opt-out requests, and objections. *Id*. ¶¶ 5-16. As of December 18, 2025, Simpluris has accomplished each task.

On July 8, 2025, Simpluris received one file from Defendant containing a total of 2,943 records of class member data. *Id*. ¶ 5. After performing standard data hygiene and deduplication analysis, the final class list was confirmed to contain 2,943 unique Settlement Class Members. *Id*. Of the 2,943 Settlement Class Members, Simpluris identified 2,319 Settlement Class Members with valid mailing addresses. *Id*. ¶¶ 5-6.

During that time, Simpluris also set up the settlement website, www.MCSDataSettlement.com that listed all settlement documents, claim forms, case details, and gave class members the chance to submit their claims online. *Id*. ¶ 9. Further, Simpluris established a toll-free telephone number to allow Class Members to call for additional information, listen to answers to FAQs. *Id*. ¶ 10.

On August 4, 2025, Simpluris disseminated Postcard Notices via U.S. First Class Mail to the 2,319 Class Members with valid mailing addresses. *Id*. ¶ 6. As of December 16, 2025, Simpluris received 441 postcard notices as "returned as undeliverable" by USPS. *Id*. ¶ 7. Notices "returned as undeliverable" were resent to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired but was still within the time period in which the USPS returned the piece with the address indicated). *Id*. Upon successfully locating better addresses, Simpluris promptly remailed the notices. *Id*. Simpluris has remailed 416 postcard notices. *Id*. Through these extensive efforts, Simpluris was able to directly notify 2,293 of the 2,219 class members with valid

6

mailing addresses, or around 98.9% of the that group (and 78% of the total Class). *Id*. ¶ 8. Simpluris therefore provided "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and succeeded in doing so. *Amchem*, 521 U.S. at 617.

The Claim Deadline was November 3, 2025. *Id.* ¶ 11. As of December 16, 2025, Simpluris has received 43 valid Claim Form submissions, which they continue to review. *Id.* ¶ 12.

The opt-out and objection deadline was October 3, 2025. *Id.* ¶¶ 13, 15. No opt outs or objections were received, evidencing the Settlement Class's approval of the Settlement's terms. *Id.* ¶¶ 14, 16. Additionally, CAFA notice was issued to the Attorneys General of every U.S. state and territory and to the U.S. federal attorney general and no objections or questions were received. *Id.* ¶4.

### III. LEGAL STANDARD

Courts approve settlements under Rule 23(e). Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). At root, the analysis centers on whether the settlement is "fair, reasonable, and adequate" *Id*. And that concept considers four factors under Rule 23(e): (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id*. Within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

These factors overlap with Fifth Circuit precedent governing the approval process. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (identifying six factors for

7

approval). The factors consider: (i) whether there was fraud or collusion when negotiating the agreement; (ii) the case's complexity; (iii) the litigation stage and discovery taken; (iv) the risk in litigating the case; (v) the "range of possible recovery;" and (vi) whether the class, class counsel, and plaintiff recommend the settlement.

Because these factors overlap with one another, "courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). In so doing, a district court must "keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003). That analysis does not mandate that plaintiffs maximize their recovery: "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, requiring a plaintiff to maximize their recovery would defeat the point in settling, as "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978).

In other words, barring any fraud or collusion, a district court should hesitate to "substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649. The settlement here satisfies that analysis.

## IV.   ARGUMENT

### A. The Settlement is fair, reasonable, and adequate

The settlement is fair, reasonable, and adequate under Rule 23(e) and the *Reed* factors because it delivers relief to approximately 2,943 current and former employees and customers of

Defendant. The Settlement provides relief *now*, rather than risk not obtaining any relief in litigation. Indeed, the Settlement secures all the benefits Plaintiff sought in his suit. Depriving Class Members of the benefits the Settlement provides on the speculative chance they may do better years from now would not serve the class's interests. For these reasons, the Settlement satisfies all factors for approval.[1]

      i.      <u>The Court should presume the settlement is "fair, adequate, and reasonable"</u>

As set forth above, there is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources." *Klein*, 705 F. Supp. 2d 632, 650. Further, in the "absence of any evidence to the contrary," the Court may also presume that "no fraud or collusion occurred between opposing counsel[.]" *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

Plaintiff and his counsel qualify for this enhanced, "strong presumption." While the parties' arm's length negotiations were always collegial, cordial, and professional, there was no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. Miller MPA Dec. ¶ 6. Those positions were informed by pre-mediation discovery exchanged under FRE 408, as well as Defendant's responses to Plaintiff's written discovery requests, both allowing Plaintiff's counsel to understand the landscape affecting settlement. *See id.*; *see also In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"). And they avoided any collusion when they insisted that the parties agree on the class's benefits before negotiating Plaintiff's attorney

---

[1] Because the *Reed* factors overlap with the factors under Rule 23, Plaintiff consolidates the analysis below.

9

fees or service award. Miller MPA Dec. ¶ 7.

As a result, the parties fulfilled what Rule 23(e) and caselaw expect under this factor, entitling them to start this analysis with the "presumption of fairness."

    ii.    <u>Plaintiff and his counsel represented the class "adequately"</u>

Plaintiff and his attorneys satisfy Rule 23(e)(2)(A) because they litigated the class's claims without conflict with the class and have established that they put the class's interests before their own. *See generally* Miller MPA Dec.; *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (adequacy satisfied when class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). There is also no evidence that Plaintiff's interest conflicted with the class, as they were "typical" class members seeking the same relief as the class and they are guaranteed nothing more than the class will receive.

To reach this result, class counsel investigated the class's claims when litigating them in Court and when exploring settlement with Defendant and insisted on Federal Rule of Evidence 408 communication and informal discovery to ensure Class Counsel had sufficient facts and information to make an informed decision about resolution. Miller MPA Dec. ¶ 6. Additionally, the parties fully briefed Defendant's motion to dismiss prior to engaging in settlement discussions. *See* Docs. 13, 18, 21. Thus, counsel had a "full understanding of the legal and factual issues surrounding this case" when agreeing to explore settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). And that work preceded counsel's efforts in engaging in informal discovery, multiple rounds of arms' length negotiations, drafting the settlement agreement and exhibits, preparing and submitting the Motion for Preliminary approval (which was ultimately granted), and implementing the parties' settlement. *See* Doc. 32-1 ("Miller Fee Dec."), ¶6; *see also*

Docs. 28, 29, 31, 32. For these reasons, Plaintiff has satisfied the "adequacy" factors.

      iii.    <u>This case's risks, complexity, and expense justify settlement at this stage</u>

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). And this case is not only "complex"—"it lies within an especially risky field of litigation: data breach." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023). This is why courts favor settling breach cases. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Although Plaintiff believed his claims were strong and that he would overcome the hurdles of a motion to dismiss, class certification, dispositive motion briefing, and trial, given the challenges faced in any complex litigation (which are even more acute in the developing area of data breach), the risks justified settling at the stage Plaintiff did. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("Settling now avoids the risks and burdens of potentially protracted litigation.").

And although the parties have settled this matter without "formal" discovery, that is no bar to settlement. *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) (The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been

11

completed."). Again, the Settlement achieves what Plaintiff desired when he filed his complaint—compensation for the class's claimed losses, and protection against future risk. There is no reason to risk losing the benefits of recovery entirely by refusing to settle on those terms.

    iv.    <u>Class counsel recommends the settlement</u>

The Court should consider class's counsel opinion on settlement because "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). As class counsel explains by their declaration, they understand how data breach cases work and the factors to consider when litigating them. Miller MPA Decl., ¶¶ 9-14. They also understand how the relief secured here exceeds that achieved in other cases. *Id*. The Court should accept this judgment when weighing the approval. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'"). As a result, Plaintiff satisfies this factor.

    v.    <u>The method for delivering relief supports approval</u>

If the Court approves the settlement, Simpluris will pay verified claims and facilitate enrollment in credit monitoring as claimed by the class. Given that Simpluris has experience in delivering relief like this—including implementing more than a thousand successful class action notice and settlement administration matters, Plaintiff trusts that the class will receive what they qualify for under the settlement. Leung Dec.¶ 2.

12

      vi.      <u>The settlement treats class members "equitably"</u>

Plaintiff satisfies the factor under Rule 23(e)(2)(D) because all class members are treated "equitably." Simpluris notified all class members using the same methods, reaching more than 98% of those whom Notice was mailed to and affording them the same options. And although their recoveries may vary in amount, that does not render the relief "inequitable," as it compensates them for their "relative" losses. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744, at *30 (W.D. Tex. Aug. 26, 2021) (approving a settlement that award differing recoveries based on a formula that considered class member's "relative" losses).

      vii.      <u>Class members have not objected or opted out of the settlement</u>

As Simpluris explains by declaration, no class members objected to the settlement or chosen to opt out—speaking to the positive response to it. Leung Dec. ¶¶ 13-16. As a result, the Court should find this factor supports settlement.

**B. The Court should finally certify the settlement class**

Settlement classes are routinely certified in consumer data security incident cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the class. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve Class Member claims, the Court should finally certify the Settlement Class for settlement purposes. For completeness, Plaintiff addresses the Rule 23(a) and (b) factors below, and also incorporates by reference the analysis in the preliminary approval motion (*see* Docs. 28-29).

***Numerosity***. The class satisfies Rule 23(a)(1) because it is "so numerous that joinder of all members is impractical." In the Fifth Circuit, even a class with 100 members "is within the range

that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). With 2,943 members, this class surpasses the standard for establishing numerosity.

*Commonality*. Plaintiff has shown "commonality" for purposes of settlement because his claims involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All class members share the same questions with their claims, including whether Defendant failed in its duties to protect their PII and thus harmed them. These questions satisfy the "commonality" factor. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)) (the questions linking class members must be "apt to drive the resolution of the litigation" by generating "common" answers, even if class members).

*Typicality*. Plaintiff satisfies this factor because his claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when the representative's claims "arise from a similar course of conduct and share the same legal theory[.]" *Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 325 (N.D. Tex. 2011) (internal quotations and citation omitted). Plaintiff satisfies this factor because the Settlement Class's claims all arise from the same event—the data incident—and all rely on the same liability theories.

*Adequacy*. Plaintiff and his counsel are more than "adequate." There is no "antagonism or conflict of interest between" the class and Plaintiff. See *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Plaintiff and the Settlement Class are entitled to the same benefits under the Settlement, and his request for a service award does not impact what the class will receive, even if the Court denies it. Additionally, Settlement Class Counsel is adequate because they are class action attorneys who know how to litigate data security cases and settle them on terms that are "fair, adequate, and reasonable." *See* Doc. 29-1 (Strauss Borrelli PLLC Firm Resume).

***Predominance and Superiority***. Under Rule 23(b), Plaintiff establishes that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). First, for the purposes of settlement, the issues affecting the class predominate over all other questions. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Those issues center on whether Defendant failed to protect the class's PII despite its duties to do so, leading the class to suffer losses stemming from the incident. And resolving this case class wide is "superior" to each class member asserting their own claims.

Thus, certification of the Settlement Class is merited under Rule 23(a) and pertinent Rule 23(b) factors.

## C. The Notice Plan Complied with Rule 23 and Due Process

The Court should approve the notice plan because the parties directed "notice in a reasonable manner" under Rule 23. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. *Id*. "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Windsor*, 521 U.S. 591, 617. Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

The notice program here has satisfied this prong. The parties used First Class Mail to alert class members to the settlement, a recognized notice method. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed class members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed class members to easily find any section that they may be looking for. Thus, it was substantively adequate.

Simpluris also set up a website for class members to review all case documents and review the settlement's details, ensuring they could claim benefits with ease. This effort exceeds what Plaintiff must show to carry their burden on the due process prong. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

## V.  CONCLUSION

For the reasons above, the Court should enter an order finally approving the parties' settlement, certifying the class for purposes of judgment on the Settlement, granting Plaintiff's

request for attorneys' fees, costs, and service awards and dismissing Plaintiff's claims against Defendant with prejudice.

Dated: December 23, 2025          Respectfully Submitted,

         By: */s/ Raina C. Borrelli*
             Raina C. Borrelli (*pro hac vice*)
             STRAUSS BORRELLI PLLC
             One Magnificent Mile
             980 N. Michigan Avenue, Suite 1610
             Chicago, IL, 60611
             Telephone: (872) 263-1100
             Facsimile: (872) 263-1109
             raina@straussborrelli.com

             Joe Kendall
             KENDALL LAW GROUP PLLC
             3811 Turtle Creek Blvd., Suite 1450
             Dallas, TX 75219
             Telephone: (214) 744-3000
             Facsimile: (214) 744-3015
             jkendall@kendalllawgroup.com

             *Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

      I, Raina C. Borrelli, hereby certify that on December 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 23rd day of December, 2025.

                                  STRAUSS BORRELLI PLLC

                                  By: */s/ Raina C. Borrelli*
                                        Raina C. Borrelli
                                        raina@straussborrelli.com
                                        STRAUSS BORRELLI PLLC
                                        One Magnificent Mile
                                        980 N Michigan Avenue, Suite 1610
                                        Chicago IL, 60611
                                        Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109