UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

LANE GAY, on behalf of himself and      §
all others similarly situated           §
                                        §
v.                                      §   CIVIL NO. 4:24-CV-217-SDJ
                                        §
MORTGAGE CONTRACTING                    §
SERVICES, LLC                           §

## MEMORANDUM OPINION AND ORDER

In this class action arising from an alleged data security incident, the named parties have agreed to settle the case. No objections to the proposed settlement or valid requests for exclusion have been submitted. After full consideration, the Court concludes that the proposed settlement should be approved and that the Lead Plaintiff and class counsel should be awarded attorney's fees and expenses.

Therefore, the Court **GRANTS** Lead Plaintiff Lane Gay's Amended and Unopposed Motion for Final Approval of Class Action Settlement. (Dkt. #38). In doing so, the Court certifies the proposed class and disposes of all claims in this class action between Gay and the class members, on the one hand, and Defendant Mortgage Contracting Services, LLC ("MCS") on the other.

The Court also **GRANTS** Lead Plaintiff's Unopposed Motion for Attorney's Fees, Costs, and Service Award. (Dkt. #31).

### I. BACKGROUND

Gay and MCS have agreed to settle the claims in this class action. The proposed settlement follows from nearly two years of litigation arising from an alleged data breach that compromised MCS's computer systems. After obtaining

1

preliminary approval of the proposed class settlement on July 3, 2025, Gay and class counsel now seek final approval and an award of attorney's fees and expenses.

## A. The Data Incident

MCS is a nationwide property services provider headquartered in Lewisville, Texas. (Dkt. #38 at 4). According to Gay, during the course of its business, MCS "collected and maintained highly sensitive" personal identifiable information ("PII") belonging to its current and former employees and customers, including names and Social Security numbers. (Dkt. #38 at 4).

In December 2023, cybercriminals gained unauthorized access to MCS's computer systems during a data security breach (the "Data Incident"). (Dkt. #38 at 4); *see also* (Dkt. #4-1) (MCS's notice of data security incident). Gay asserts that "the unauthorized actor may have acquired files" containing the PII "of current and former [MCS] employees and customers" including Gay. (Dkt. #38 at 4).

## B. The Resulting Class Action Litigation

Gay filed this putative class action against MCS in March 2024. (Dkt. #1). The Complaint asserted claims for (1) negligence, (2) negligence per se, (3) intrusion upon seclusion / invasion of privacy, (4) breach of implied contract, (5) unjust enrichment, (6) breach of fiduciary duty, and (7) breach of confidence. (Dkt. #1 ¶¶ 98–174). Gay sought damages, injunctive relief, and other equitable relief. (Dkt. #1 ¶ 175). Thereafter, Gay filed an Amended Complaint alleging the same causes of action. (Dkt. #4). MCS filed a Motion to Dismiss the Amended Complaint, which was fully briefed by the parties. (Dkt. #13, 18, 21). Then, in March 2025, the parties notified the Court of a joint settlement. (Dkt. #24).

Class counsel diligently litigated the case, finalizing and executing the settlement in June 2025. (Dkt. #38 at 5). Class counsel's efforts to secure the proposed settlement included months of negotiations with counsel for MCS. (Dkt. #38 at 5).

## C. The Proposed Class Action Settlement

The proposed class settlement disposes of all claims in this class action and provides relief available to all class members. The proposed class includes "all individuals in the United States whose PII was impacted by the Data Incident[,] including all those who were sent notice of the Data Incident." (Dkt. #38-2 at 4).

The proposed class settlement provides several categories of relief to class members. First, the proposed class settlement provides uncapped monetary relief for documented losses attributable to the Data Incident. (Dkt. #38 at 5). Class members may submit claims for reimbursement of "extraordinary out of pocket losses" of up to $5,000 per claimant for identity fraud and theft-related losses "more likely than not caused by the Data Incident" or "ordinary out-of-pocket losses" of up to $500 per claimant for expenses incurred because of the Data Incident. (Dkt. #38 at 5–6). Class members who spend time responding to the Data Incident may recover compensation at $25 per hour for up to three hours. (Dkt. #38 at 6). Second, the proposed settlement class members are entitled to receive two years of credit monitoring and identity theft protection, and $1 million in identity theft insurance free of charge. (Dkt. #38 at 6). Third, MCS will pay the costs of settlement administration and notice, and class counsel's attorneys' fees and costs and Plaintiff's service award. (Dkt. #38 at 6).

Following the Court's preliminary approval of the proposed class action settlement on July 3, 2025, (Dkt. #30), Gay diligently notified the potential class

3

members of the proposed settlement. Potential class members were notified by postcard notice, resulting in delivery of notices to 2,293 of the 2,319 potential class members.[1] (Dkt. #38 at 8). No class members objected to the proposed settlement or requested exclusion from the proposed settlement. (Dkt. #38 at 8). Further, a CAFA notice was issued to the attorneys general of every U.S. state and territory and to the U.S. Attorney General; no objections or questions were received. (Dkt. #38 at 8).

Gay now moves for final approval of the proposed class settlement and for attorney's fees and expenses. (Dkt. #31, #38). MCS does not oppose these motions. The Court held a settlement fairness hearing on February 20, 2026, to evaluate the proposed settlement's fairness, reasonableness, and adequacy to all class members. (Dkt. #41). No class members appeared at the hearing. *See* (Dkt. #41). Also, the October 3, 2025, deadline for objecting to the proposed class settlement or requesting exclusion from it has passed. (Dkt. #38 at 8).

## II. LEGAL STANDARD

The Court's responsibilities in evaluating a class action settlement run not only to the named parties, but also to the unnamed class members. The Court must ensure that the class members receive adequate notice of the settlement and an opportunity to object or request exclusion from it. FED. R. CIV. P. 23(e)(1); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1219 (5th Cir. 1978). The Court also must ensure that that the settlement is "fair, reasonable, and adequate" to the class members under

---

[1] These notices were delivered through a third-party administrator. The administrator also maintained a webpage and toll-free number to inform class members of the settlement and instruct them on submitting claims. (Dkt. #38 at 6–7).

4

the four factors enumerated in Federal Rule of Civil Procedure 23(e)(2): (1) adequacy of the representation, (2) fairness of the negotiations (i.e., whether the negotiations were at arm's length), (3) adequacy of the relief, and (4) equitability of treatment to class members. The adequacy of relief factor turns on several considerations, including the risks of proceeding to trial.[2] FED. R. CIV. P. 23(e)(2)(C).

In addition to the nonexclusive Rule 23 factors, courts in this circuit often consider the *Reed* factors in evaluating the fairness, reasonableness, and adequacy of a proposed class settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citations omitted); *ODonnell v. Harris Cnty.*, No. 4:16-CV-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (observing that "courts in this circuit often combine [the Rule 23 and *Reed* factors] in analyzing class settlements.").

## III. DISCUSSION

The Court finds that the motion for final approval of the proposed class settlement should be granted. The proposed settlement is fair, reasonable, and

---

[2] The Rule 23 factors were added by amendment in 2018. According to the Advisory Committee, these factors do not "displace any factor" sanctioned by the circuit courts. FED. R. CIV. P. 23(e)(2) Advisory Committee's Note to 2018 Amendments. Instead, they were added to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

adequate to the class members. The class members each received adequate notice of the settlement and the settlement will be effectively distributed through the plan of allocation. The Court therefore certifies the proposed class, approves the class settlement, and awards Gay and class counsel the requested attorney's fees and expenses.

## A. The Proposed Class Settlement Is Fair, Reasonable, and Adequate.

The proposed class settlement is fair, reasonable, and adequate under both the Rule 23 and *Reed* factors.

### i. Adequacy of class representation.

The record establishes that Gay and class counsel adequately represented the settlement class in litigating this complex data-breach case and in negotiating the proposed settlement agreement. Gay has suffered the same alleged injuries as the other class members. His motivations are therefore aligned with the other class members, reducing the likelihood of a conflict of interest. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Gay also actively participated in the case by communicating with counsel and participating in settlement negotiations, further demonstrating the adequacy of his representation. (Dkt. #32-2 ¶¶ 3–6).

Class counsel diligently prosecuted the case on behalf of the class. In addition to drafting pleadings and negotiating the settlement agreement, counsel also investigated the claims and engaged in initial discovery. (Dkt. #38 at 11–12). Counsel

was competent and informed, and ably represented not only Gay but also the proposed class.

### ii. Arm's length negotiations, fraud, and collusion.

The proposed settlement agreement is not the product of fraud or collusion; instead, it arises from extensive arm's length negotiations between sophisticated counsel. The parties entered the proposed settlement agreement after investigating the class's claims, engaging in informal discovery to ensure class counsel had sufficient facts and information to make an informed decision regarding resolution of the class's claims, and conducting multiple rounds of settlement negotiations. (Dkt. #38 at 11–12). There is no evidence that the proposed settlement has been coerced through fraud or collusion. In any event, the Court may presume the absence of any fraud or collusion when, as here, no evidence has been presented to the contrary. *See Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

### iii. Adequacy of relief; expected complexity, expense, and duration of the litigation.

The proposed settlement agreement provides adequate relief to the class. It achieves Gay's aims in this litigation in that it provides compensation for the class's alleged losses and protection against future risk arising from the Data Incident. Consequently, the relief provided in the proposed settlement is adequate to compensate the class.

This is especially true when the case involves complex issues like those presented in this data-breach class action. There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 651 (N.D. Tex. 2010) (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Settlement "avoids the risks and burdens of potentially protracted litigation" and consequently, courts favor settling complex data-breach cases such as this. *See Ayers*, 358 F.3d at 369. Because any future recovery would be burdensome and unpredictable, Gay opted for a settlement that is immediate and guaranteed. That settlement will adequately and fairly compensate the class.

Further, the Court accords great weight to class counsel's support for the proposed settlement agreement. *Klein*, 705 F.Supp.2d at 649 (holding that "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when evaluating class settlement). Here, class counsel is highly experienced in this type of litigation. (Dkt. #29 ¶¶ 9, 15–22). Consequently, they understand data-breach class actions and the factors to consider when litigating them. Therefore, the Court may rely upon the judgment of class counsel. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement,

'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

### iv. Equitable distribution.

The proposed settlement's allocation plan equitably distributes proceeds between the class members. When an allocation plan is "formulated by competent and experienced counsel," it will generally be upheld if it is supported by a "reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (cleaned up).

Here, the allocation plan is supported by a reasonable basis. The settlement administrator notified all class members using the same methods, resulting in notice being delivered to over 98% of class members whose valid mailing addresses could be identified. (Dkt. #38 at 8, 14). Each class member who received notice was afforded the same options. (Dkt. #38 at 14). While each class member may recover different amounts, the relief afforded is no less equitable, as it compensates each class member for their "relative" losses. *See Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *10 (W.D. Tex. Aug. 26, 2021) (approving a settlement that awarded differing recoveries based on a formula that considered class members' "relative" losses).

### v. Stage of proceedings and discovery efforts.

The stage of proceedings and discovery efforts factor also weighs in favor of approving the proposed settlement. In evaluating this factor, the key issue is whether the parties and court possess sufficient information to "evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Even when the parties "have not

conducted much formal discovery," this factor can be satisfied when other information demonstrates that the settlement should be approved. *Klein*, 705 F.Supp.2d at 653; *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("[F]ormal discovery is not a prerequisite to approving a [class] settlement as reasonable."). That conclusion flows naturally from the general principle that early settlements should be encouraged, not hindered, so long as the parties have obtained the "desired quantum of information necessary to achieve a settlement." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014) (cleaned up).

Here, the parties have obtained ample information to achieve an informed settlement. While they have not engaged in extensive discovery, the parties have conducted initial discovery, which included exchanging written discovery requests and responses thereto. (Dkt. #38 at 11). This initial discovery allowed class counsel to "understand the landscape affecting settlement." (Dkt. #38 at 11).

### vi. Probability of success on the merits.

The proposed settlement's fairness, reasonableness, and adequacy is further demonstrated by the uncertainty of success should the case proceed to trial. When there has been no showing of fraud or collusion, the probability of success is the most important factor in evaluating a proposed settlement. *Smith v. Crystian*, 91 F.App'x 952, 955 n.3 (5th Cir. 2004) (per curiam) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). This factor requires the court to "compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007). But in comparing the settlement's terms with the potential rewards at trial, the court

10

must avoid "try[ing] the case in the settlement hearings." *Reed*, 703 F.2d at 172. That would undermine the settlement's "very purpose," which is to "avoid the delay and expense of such a trial." *Id.* (cleaned up).

Here, the claims against MCS are hotly contested and difficult to prove. Against Gay's efforts to develop these claims, MCS has retained sophisticated counsel to oppose these efforts and would likely continue opposing them through trial and appeal. Moreover, even if Gay established MCS's liability for the alleged Data Incident, he would face additional challenges certifying a class and establishing damages on a class-wide basis. For example, it is likely that MCS would vigorously dispute the connection between the Data Incident and any alleged damages suffered by class members. If Gay could prove the connection, MCS could still dispute what portion of the breach was attributable to its actions as opposed to other causes.

The result would likely be a protracted battle of the experts that is avoided through the proposed settlement. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 236, 286 (3d Cir. 2001) (approving class action settlement in securities litigation in which competing positions on damages issues would have devolved into a "battle of the experts"); *In re OCA, Inc. Sec. & Derivative Litig.*, No. CV-05-2165, 2009 WL 512081, at *14 (E.D. La. Mar. 2, 2009) ("Because the jury would have been faced with competing expert opinions, the resulting damage award would have been highly unpredictable.").

### vii. Range and certainty of recovery.

The range and certainty of recovery factor also weighs in favor of approving the proposed settlement. In evaluating this factor, the Court must begin by

11

establishing a "range of possible damages that could be recovered at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983) (cleaned up). After establishing the range of possible damages that could be recovered at trial, the Court then determines whether the settlement is "pegged at a [fair] point in the range" in light of the "likelihood of prevailing at trial and other relevant factors." *Id.* (cleaned up).

As explained in the discussion of the above factors, *see supra* Part III.A.i.–vi., Gay and the class faced considerable risks in proceeding to trial. Considering these risks, it is far from guaranteed that the class would have recovered even a fraction of the total amount in controversy. In contrast to the risk of trial, the proposed settlement achieves everything Gay desired when he filed his complaint. Namely, the proposed settlement provides uncapped monetary relief to compensate class members for any alleged damages arising from the Data Incident and protection from any future incidents free of charge. (Dkt. #38 at 5–6).

### viii. Opinions of participants and absent class members.

The virtually unanimous support for the proposed settlement also demonstrates its fairness, reasonableness, and adequacy. The named parties and class counsel all believe that the proposed settlement is a favorable outcome for both the active participants in the litigation and the absent class members. That the parties and class counsel unanimously support the proposed settlement is an important fact weighing in favor of its approval because, "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). And here, the parties

12

and counsel, all of whom are sophisticated, have vigorously defended their respective positions, lending further support for the settlement's fairness.

In addition to the named parties and class counsel, the absent class members also appear to support the proposed settlement. Out of nearly 2,300 potential class members who received notice of the settlement, no potential class members objected to the proposed settlement or validly requested to be excluded from it. (Dkt. #38 at 8). This lack of objection from the class members supports the "adequacy of the settlement." *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (cleaned up).

## B. The Class Members Received Adequate Notice of the Proposed Settlement.

The Court also finds that the class members received adequate notice of the proposed settlement. The adequacy of a class settlement notice is not governed by "rigid rules." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), *superseded on other grounds by Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *3 n.1. Instead, the notice must satisfy the "broad reasonableness standard[]" imposed by due process and Rule 23(e). *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (cleaned up). To satisfy that standard, the notice must provide class members with "information reasonably necessary" to decide whether to object to the settlement or not. *Id.* The standard does not require "actual notice to each party" to be bound by the settlement. *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *3 n.1 (citing

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

Here, the class notices were adequate both in timing and content. In terms of timing, class counsel published and distributed the class settlement notices approximately two months before the deadline to object to the settlement. (Dkt. #38 at 8). These efforts resulted in delivery of notices to nearly 2,300 potential class members before the objection deadline. (Dkt. #38 at 8). The Court finds, therefore, that the notice procedures provided class members ample time to object to the settlement if they wished to do so. *See DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 947 (10th Cir. 2005) (holding that the class members received adequate notice of a class settlement when the notices were "sent out nearly two weeks prior to the settlement hearing").

In terms of content, the notices adequately informed the class members of the nature of the settlement and the procedures for objecting or submitting a claim. The notices were delivered via postcards to valid, up-to-date mailing addresses, (Dkt. #38 at 8), increasing the likelihood that class members would receive the notices and understand them. *See Erica P. John Fund, Inc.*, 2018 WL 1942227, at *3 (holding that notices delivered through similar procedures satisfied the Rule 23 requirements). These efforts satisfy due process and Rule 23.

## C. The Proposed Class Meets the Requirements for Class Certification.

The proposed class also meets the requirements for class certification and should be certified. The Court first addresses the threshold requirements for class certification under Rule 23(a): numerosity, commonality, typicality, and adequacy of

14

representation. The Court then addresses the additional requirements for class certification under Rule 23(b), concluding that class certification is justified under the predominance and superiority prong. A proposed class must satisfy these requirements even when it is certified for settlement purposes only.

Here, the proposed class includes all individuals in the United States whose PII was impacted by the Data Incident, including all those who were sent notice of the Data Incident, (Dkt. #38-1 at 11–12).

### i. Numerosity.

The proposed class is sufficiently numerous that "joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Gay's evidence shows that the proposed class contains almost three thousand members. (Dkt. # 38 at 15). Accordingly, the Court finds that Plaintiff has met his burden to show that the proposed class is so numerous that joinder is impracticable as required by Rule 23(a)(1). *See Seeligson v. Devon Energy Prod. Co.*, No. 3:16-CV-82-K, 2017 WL 68013, at *5 (N.D. Tex. Jan. 6, 2017) (finding numerosity requirement satisfied where proposed class contained "over several thousand members" and defendants did not contest numerosity), *overruled on other grounds*, 753 F.App'x 225, 231 (5th Cir. 2018) (per curiam); *see also McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337, 339 (S.D. Miss. 2015) (determining joinder of all members was impracticable where class consisted of hundreds of members); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999) (concluding numerosity requirement was met where it would be difficult or inconvenient to join all "100 to 150" class members).

15

### ii. Commonality.

The proposed class shares common questions of law or fact. All class members share the same questions with their claims, such as whether MCS failed in its duties to protect their PII and thus harmed them. These questions satisfy the commonality factor. *See In re Heartland Payment Sys., Inc. v. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1052 (S.D. Tex. 2012) (explaining that questions linking class members must be "apt to drive the resolution of the litigation" by generating "common" answers (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011))).

### iii. Typicality.

Gay's claims against MCS are typical of those belonging to the class. He alleges that he suffered the same alleged injuries as the other class members arising from the same alleged wrongdoing. *See, e.g.*, *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 446 (W.D. Tex. 2019) (holding that plaintiff shareholder's claims were typical of those belonging to the class, where "[a]ll putative class members, including [p]laintiff, allegedly purchased . . . stock during the class period at prices inflated" by the defendants).

### iv. Adequacy of representation.

Gay and class counsel fairly and adequately represented the class. *See supra* Part III.A.i. As he alleges to have suffered the same injury as the other class members, he has the same interests as the rest of the class. There is no conflict of interest between Gay and the class, and Gay is entitled to the same benefits under the settlement. Further, Gay's request for a service award does not impact what the

16

class will receive. Additionally, class counsel was competent and experienced, ably representing the class. Class counsel's efforts to secure a favorable settlement included investigating the claims and negotiating a favorable settlement.

### v. Predominance and superiority.

In addition to meeting the threshold requirements for class certification under Rule 23(a), the proposed class also satisfies the predominance and superiority requirements of Rule 23(b)(3). Rule 23(b)(3) is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (cleaned up). The rule's twin requirements of "predominance" and "superiority" must each be satisfied. *See, e.g., Sykes v. Mel. S. Harris & Assocs. LLC*, 780 F.3d 70, 81–82 (2d Cir. 2015) (describing Rule 23(b)(3)'s "disjunctive inquiry," which requires separate determinations as to "predominance" and "superiority"); *see also Amchem Prods., Inc.*, 521 U.S. at 615.

Here, the class issues predominate over individual issues. That is true because the class members share identical claims against MCS. And each claim presents virtually identical questions of law and fact, except that some class member may have suffered different amounts of damages compared to others.

Class adjudication is also superior to individual adjudication of the issues in these types of cases. Many class members would be unmotivated to prosecute their claims because the "cost of bringing individual suits" would likely "outweigh the

recovery obtained." *Rooney*, 330 F.R.D. at 451–52. Class adjudication resolves the claims quickly and more efficiently than deciding each claim on an individual basis.

*      *      *

Because the proposed class meets both the threshold requirements for class certification under Rule 23(a) as well as the additional requirements of predominance and superiority under Rule 23(b)(3), the Court concludes that the proposed class should be and is certified.

## D. Class Counsel Is Entitled to Attorney's Fees.

Class counsel has established not only the fairness of the proposed settlement and grounds for certifying the class, but also a basis for recovering attorney's fees. Under the common fund doctrine, a lawyer can retain a reasonable portion of a fund obtained on behalf of others. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). The common fund doctrine ensures that attorneys are fairly compensated for their efforts and encourages them to undertake risky litigation for which no reward is guaranteed. *See id.*; *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).

To invoke the common fund doctrine in a class action case, a lawyer must demonstrate his compliance with Rule 23's procedural requirements and the reasonableness of the fees requested. Here, Gay's counsel complied with Rule 23's procedural requirements by notifying the class members of the requested fees

through mail and a website—affording each class member an opportunity to object—and by filing a motion requesting the fees. FED. R. CIV. P. 23(h).

Gay's counsel also established the reasonableness of the fees requested. In common fund cases, the Court may evaluate the reasonableness of the requested fees using one of two methods: the percentage method or the lodestar method. *See Union Asset Mgmt. Holding A.G.*, 669 F.3d at 644 ("We join the majority of circuits in allowing our district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations.").

Alternatively, the court may employ both methods, checking them against each other, to confirm the reasonableness of the total award. *See, e.g.*, *Evans v. TIN, Inc.*, No. CV 11-2067, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013). No matter the method employed, the Court must always apply the twelve *Johnson* factors to determine whether the award should be adjusted, either upward or downward, based on the facts and circumstances of the case. *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 354–55 (5th Cir. 2019) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Although the Court must explain how each factor affects the award, the explanation "need not be meticulously detailed." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008) (cleaned up).

As explained below, the Court finds that the requested attorney's fees are reasonable under the percentage method. The fees require no adjustment under the

19

*Johnson* factors. A lodestar cross-check also confirms the reasonableness of the requested fees.

### i. Percentage method.

The requested fees are reasonable under the percentage method. In keeping with its name, this method awards counsel a fixed percentage of the recovery obtained. *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 642–44. The percentage method is often the preferred method for calculating reasonable attorney's fees in common fund cases because it "aligns the interests of class counsel [and] . . . the class members," encouraging successes and penalizing failure. *Id.* at 643; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). It also "allows for easy computation" in complex cases. *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 643.

Here, Gay's counsel requests an attorney's fee award of $137,500, which amounts to less than one percent of the $14.385 million maximum value available to the class.[3] (Dkt. #32 at 10); (Dkt. #42 ¶ 11). This request is reasonable. Recognizing that common fund litigation is risky for counsel, on the one hand, and beneficial to the public, on the other, courts frequently award attorney's fees up to thirty-three percent of the settlement fund. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average

---

[3] Class counsel calculated the maximum value available to the class by multiplying 2,877 class members by $5,000, the maximum relief available to each member for "extraordinary losses." (Dkt. #32 at 10); (Dkt. #32-1 at 6). The Court notes, however, that 2,943 unique class members were identified, (Dkt. #38 at 7), so the maximum value available to the class is actually slightly higher than class counsel's number, at $14.715 million. This discrepancy does not change the attorney's fees analysis.

around one-third of the recovery."). Some courts have awarded even higher percentages. *See In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *1 (W.D. La. Oct. 31, 2006) (awarding class counsel 36% of the common fund); *In re Combustion, Inc.*, 968 F.Supp. 1116, 1132, 1135–36, 1138, 1140 (W.D. La. 1997) (awarding class counsel 36% of the common fund, amounting to approximately $46 million).

Here, the requested fees are well below the maximum accepted range. And the reasonableness of the fee award is supported further by the lack of any objection to the request and by counsel's competence and diligence in prosecuting the case.

### ii. *Johnson* factors.

The fee award requires no adjustment under the *Johnson* factors. *See Johnson*, 488 F.2d at 717–19.

***Time and Labor Required.*** Class counsel spent considerable time and labor achieving the proposed settlement. The time and labor factor turns on more than the number of hours worked. In common fund class action cases, in particular, an early settlement often signals counsel's "efficiency" and "effectiveness" compared to similar cases that "unnecessarily dragged on for years." *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005); *see also In re Harrah's Ent., Inc.*, No. CV. 95-3925, 1998 WL 832574, at *5 (E.D. La. Nov. 25, 1998) (observing that "overly emphasiz[ing]" the hours worked can "penalize counsel for obtaining an early settlement" and "distort the value of the attorneys' services.").

Here, class counsel achieved a favorable settlement relatively early in proceedings—before extensive discovery. And class counsel obtained the favorable

settlement through significant effort: investigating the Data Incident pre-litigation, interviewing potential plaintiffs, drafting the complaint, preparing and defending against MCS's motion to dismiss, preparing the Rule 26(f) report and attending the conference, engaging in extensive negotiations, negotiating the term sheet and settlement agreement, drafting the motion for preliminary approval and supporting exhibits, coordinating with the settlement administrator on settlement administration, and preparing the fee motion. (Dkt. #32 at 11–12). The Court finds that the requested fee award adequately compensates class counsel for these efforts, requiring no adjustment.

*Novelty and Difficulty of Issues; Undesirability of Case.* Data breach litigation is a rapidly developing area of the law that poses complex issues, including unsettled standing issues. *See, e.g., In re SuperValu, Inc.*, 870 F.3d 763, 767–69 (8th Cir. 2017) (discussing traceability and injury in fact in data breach litigation); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."); *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-CV-1386-VMC-CPT, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"). The requested fee award adequately compensates

22

counsel for undertaking a difficult and relatively undesirable case. No adjustment is required under these factors.

***Skill Required; Attorney Experience, Reputation, and Ability.*** Because of the difficulty and complexity of the issues, this case required skilled attorneys.[4] Here, the attorneys for both sides were adequately skilled to meet these demands: they were reputable, competent, and accomplished.

As previously discussed, data breach class actions require substantial skill and expertise. *See, e.g., In re Sonic Corp.*, 2019 WL 3773737, at *10 (noting the "professional skill" of class counsel in the context of "unsettled data breach litigation"); *Fulton-Green*, 2019 WL 4677954, at *13 (holding that class counsel's "substantial experience in class action litigation, including data breach class actions . . . weighs in favor of determining that the fee is reasonable"). Further, class counsel used informal discovery and engaged in extensive negotiations to secure substantial and speedy benefits on behalf of the class. *Lara v. Lubbock Heart Hosp., LLC*, No. 5:23-CV-36 (N.D. Tex. July 31, 2024), (Dkt. #50 at 26) (finding that the third factor supported approval because class counsel used "informal discovery and mediation to achieve a speedy and fair settlement").

Because the requested fee award accounts for the skill required to litigate this case and counsel's experience, reputation, and ability, no adjustment is required under these factors.

---

[4] In evaluating the skill required for a particular case, the district court judge's "past experience as a lawyer" and his "observation[s] from the bench" are "highly important." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 789 (S.D. Tex. 2008) (quoting *Johnson*, 488 F.2d at 718).

***Preclusion from Other Employment.*** Class counsel spent nearly 200 hours litigating this case, (Dkt. #42 ¶ 7), a substantial time commitment that likely precluded counsel from working on other matters. *See Schwartz*, 2005 WL 3148350, at *31 ("The time spent by [class] counsel on this case was at the expense of time that counsel could have devoted to other matters."); *Burford v. Cargill, Inc.*, No. 05-0283, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012) (holding that the preclusion-from-employment factor weighed in favor of a "substantial fee award" because the class attorneys "were often times precluded from working on other cases due to the demands of the instant matter"). Because the requested fee award adequately compensates counsel for investing considerable time into this matter, this factor does not require any adjustment.

***Fixed or Contingent Fee; Customary Fee in the Community; Awards in Similar Cases.*** Class counsel litigated this case on a contingency basis. (Dkt. #32 at 15). That basis supports the requested fee award. In undertaking this representation, counsel invested significant time and resources with no guaranteed return. *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174, 1175–76 (5th Cir. 1986).

When class actions are litigated on a contingency basis in the Eastern District of Texas, counsel is customarily awarded fees ranging from twenty-five percent of the

24

settlement fund to over thirty-three percent of the settlement fund. *Shaw*, 91 F.Supp.2d at 972 ("[F]ee awards in class actions average around one-third of the recovery."); *see also Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017) ("It is not unusual for attorneys' fees awarded under the percentage method to range between 25% to 30% of the [settlement] fund or more."), *report and recommendation adopted by* No. 6:13-CV-736, 2018 WL 307024 (E.D. Tex. Jan. 4, 2018); *Ramirez v. J.C. Penney Corp.*, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017) (same), *report and recommendation adopted by* 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017).

Here, because the requested fee award adequately compensates counsel for undertaking a class action on a contingency basis, and because the requested fee award is customary in the community and matches those awarded in similar cases, these factors do not require any adjustment.

***Amount Involved and Results Obtained.*** The amount in controversy in this case is significant. However, class counsel obtained a significant amount—a maximum of $5,000 per class member and future protection for their PII free of charge. When considering the results obtained, "both the Supreme Court and the Fifth Circuit have explicitly rejected the notion that an award of attorneys' fees must be 'proportional' to the damages awarded to a successful plaintiff." *Pittman v. Sw. Bell Tel. L.P.*, No. SA-20-CA-01262-XR, 2022 WL 20508220, at *3 (W.D. Tex. Aug. 16, 2022). Here, class counsel succeeded in obtaining substantial monetary relief for all individuals in the class. Further, the proposed settlement requires MCS to

25

implement data security upgrades at its own cost, reducing future risk to class members. Therefore, this factor supports the requested fee award without need for any adjustment.

*Time Limitations; Nature and Length of Relationship with Client.* The time limitations and client relationship factors also do not require any adjustment to the requested fee award. For time limitations, the parties have not identified any timing constraints imposed by the clients or circumstances. *Erica P. John Fund, Inc.*, 2018 WL 1942227, at *11 ("This factor does not apply in this case because there is no indication that Lead Plaintiff imposed any time limits in the prosecution of this case."); *see also In re Combustion, Inc.*, 968 F.Supp. at 1135 ("Even though it is apparent that the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be necessarily considered.").

As for the nature and length of the client relationship, the Court finds that class counsel ably represented the class beginning in 2024. Both class counsel and Gay actively participated in the litigation for its full duration. Considering counsel's dedication to Gay and to the class stretching more than a year, the requested fee award adequately compensates counsel. That conclusion is supported by the fact that Gay and class counsel maintained "an effective and professional relationship" throughout the litigation process. (Dkt. #32-1 ¶ 13); *see also Erica P. John Fund, Inc.*, 2018 WL 1942227, at *12 (finding that this factor weighed in favor of a requested fee award when "the professional relationship with Lead Plaintiff was positive").

### iii. Lodestar cross-check.

A lodestar cross-check confirms the reasonableness of the fees requested. The lodestar method focuses on the work performed as opposed to the recovery obtained. To calculate the lodestar, the court multiplies the attorney's hourly rate by the hours worked. *See Hobbs v. EVO Inc.*, 7 F.4th 241, 259 (5th Cir. 2021).

Here, counsel submitted affidavits and declarations supporting a lodestar amount of $126,782.50. (Dkt. #42-1 ¶ 3). The affidavits and declarations do not include contemporaneous billing records, detailed time entries, or proof of the rate typically charged in the community, as would typically be required to support a claim for attorney's fees. *See McClain*, 649 F.3d at 381–82. Nevertheless, the submitted affidavits and declarations are sufficient under the circumstances. No party objected to the fee request. And the Court is employing the lodestar method only as a rough cross-check to confirm the reasonableness of the percentage award. *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 867 (E.D. La. 2007) (observing that, in performing a lodestar cross-check, the court need not employ "mathematical precision" or scrutinize each time entry, and "representations by class counsel as to total hours [worked] may be sufficient" (cleaned up)).

When a lodestar cross-check is applied to a class-action fee award in a common fund case, courts frequently use a multiplier ranging from one to four to evaluate the reasonableness of the percentage method calculation. *See, e.g., Burford*, 2012 WL 5471985, at *6 n.1 (approving a 1.78 multiplier and remarking that courts frequently approve multipliers ranging from 1 to 4); *Di Giacomo v. Plains All Am. Pipeline*,

27

No. Civ.A.H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (approving a 5.3 multiplier in a securities class action).

Here, the *Johnson* factors, for the reasons explained above, *see supra* Part III.D.ii., support a $137,500.00 attorney's fee award—which is the lodestar amount multiplied 1.07 times. That multiplier falls in the commonly accepted range. The Court thus finds that the lodestar cross-check confirms the reasonableness of the requested fee award.

### E. Gay May Recover Reasonable Expenses.

Gay may recover reasonable expenses incurred during the litigation. Gay requests $3,000.00 for the considerable time he invested in the case communicating with counsel, reviewing documents, and participating in settlement negotiations. (Dkt. #32-2 ¶¶ 3–7, 9–10).

The Court agrees that Gay invested considerable time and effort to this case and awards Gay the requested recovery of $3,000.00. The award is below what courts have awarded in other class action cases. *See, e.g.*, *Burford*, 2012 WL 5471985, at *6 (awarding named plaintiffs up to $15,000.00 in compensation for efforts expended representing the class); *In re Catfish Antitrust Litig.*, 939 F.Supp. 493, 504 (N.D. Miss. 1996) (awarding $10,000.00).

## IV. CONCLUSION

The parties and counsel have diligently litigated this case and achieved a favorable settlement not only for the named parties, but also for the absent class members. The reasonableness of the settlement is reflected by the lack of any

28

objection to it. The Court finds that the proposed settlement should be approved, the

class certified, and the requested fees and expenses awarded.

It is therefore **ORDERED** as follows:

1. The Court finally approves the proposed settlement agreement, (Dkt. #38), as fair, reasonable, and adequate under the Federal Rules of Civil Procedure. Its terms shall bind all class members.

2. The Court finally certifies a class of all individuals in the United States whose PII was impacted by the Data Incident, including all those who were sent notice of the Data Incident.

3. The Court dismisses with prejudice all claims in this action between the class and Defendants.

4. The Court approves the parties' proposed allocation plan as a fair and reasonable method of allocating the settlement fund among class members. The Court directs the parties to distribute through the claims administer the settlement fund in accordance with the settlement agreement and stipulation. (Dkt. #38).

5.  The Court awards class counsel $137,500.00 in attorney's fees and expenses. The Court awards lead Plaintiff Lane Gay $3,000.00 for expenses.

**So ORDERED and SIGNED this 22nd day of April, 2026.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

29